# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MUSHROOM EXPRESS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> PENSKE TRUCK LEASING CO., LP, <br><br> Defendant. <br> _____ <br> AND RELATED COUNTERCLAIM | CASE NO. 13cv2622 JM(NLS) <br><br> ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, PARTIAL MOTION FOR SUMMARY JUDGMENT |

Defendant and Counter-Claimant Penske Truck Leasing Co., LP ("Penske") moves for summary judgment or, alternatively, partial summary judgment. Plaintiff and Counter-Defendant Mushroom Express, Inc. ("Mushroom") opposes the motion. Pursuant to L.R. 7.1(d)(1), the matters presented are appropriate for decision without oral argument. For the reasons set forth below, the court grants in part and denies in part Penske's motion for summary judgment.

## BACKGROUND

On September 6, 2013, in the Superior Court for the County of San Diego, Plaintiff commenced this action by alleging a claim for breach of contract and a claim for intentional interference with prospective business interests. (Ct. Dkt. 1). Following removal of the action to this court on October 30, 2013, based upon diversity

jurisdiction, the parties jointly moved to dismiss with prejudice the intentional interference with prospective business interests claim. (Ct. Dkt. 5). On February 26, 2014, Penske answered the Complaint and filed a Counterclaim alleging three causes of action for breach of contract, account stated and common counts. Penske seeks to recover unpaid lease payments in the amount of $15,150.20.

Mushroom's claims arise from the following alleged events. Mushroom, incorporated in California with its principal place of business in California, is engaged in the business of growing and distributing mushrooms to customer accounts throughout the nation. (Compl. ¶2). Penske, a Delaware corporation with its principal place of business in Pennsylvania, is in the business of leasing vehicles, among other things. In December 2009, the parties entered into a written contract, the Vehicle Lease Service Agreement ("Agreement"), pursuant to which Penske agreed to lease freightliner trucks to Mushroom in exchange for lease payments. The Agreement also provided that Penske would "provide all preventive maintenance and repairs to keep the leased vehicle in good repair and operating condition." (Compl. ¶7). In the event a leased vehicle became disabled, Penske "agreed to provide a substitute vehicle in good repair and operating condition at the location where the originally leased vehicle became disabled." Id.

In January 2010, one of Mushroom's drivers was operating a leased vehicle in western Oklahoma when the truck broke down and became disabled. (Compl. ¶9). Mushroom notified Penske and a substitute vehicle was delivered to the site of the break down. The substitute truck provided had just been returned to Penske with a mechanical problem. Upon delivery of the substitute vehicle, the Penske "drivers advised Plaintiff's driver of the problems with the substitute vehicle." The substitute vehicle would not start and had to be towed away. (Compl. ¶10-12). A second substitute vehicle was requested. However, by the time it arrived, Mushroom could not make a timely delivery to its largest customer and "the perishable produce had declined in quality during the delay." (Compl. ¶15). Based upon the failure to timely provide

a working substitute vehicle, Mushroom asserts that Penske breached the Agreement by (1) not properly maintaining the originally leased vehicle and (2) failing to provide a substitute vehicle in good operating condition. Mushroom asserts that the 15 hour delay "resulted in a significant downgrade in the quality of mushrooms after losing at least 15% of its shelf life" as a result of the "delay in providing the substitute vehicle." (Oppo. at p.10:26-28).

The Counterclaim filed by Penske alleges that Mushroom stopped paying the lease invoices starting in August 2012. As of October 2013, there allegedly remained an unpaid balance under the Agreement in the amount of $15,150.20. (Counterclaim ¶12).

**DISCUSSION**

**Legal Standards**

A motion for summary judgment shall be granted where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Prison Legal News v. Lehman, 397 F.3d 692, 698 (9th Cir. 2005). The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the file which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). There is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." Id. (emphasis in original). The opposing party cannot rest on the mere allegations or denials of a pleading, but must "go beyond the pleadings and by [the party's] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file, designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (citation omitted). The opposing party also may not rely solely on conclusory allegations unsupported by factual data. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

The court must examine the evidence in the light most favorable to the non-

moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Any doubt as to the existence of any issue of material fact requires denial of the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). On a motion for summary judgment, when "'the moving party bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence were uncontroverted at trial.'" Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992) (emphasis in original) (quoting International Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1264-65 (5th Cir. 1991), cert. denied, 502 U.S. 1059 (1992)).

**The Motion for Summary Judgment**

The Choice-of-Law Issue

Before addressing the merits of the summary judgment motion, the parties dispute whether the contractual choice-of-law provision, choosing Pennsylvania state law, applies to the parties' contractual relationship. Mushroom argues that California law should apply to the parties' relationship but then applies Pennsylvania law to the parties' contractual relationship.

Federal courts look to the law of the forum state in resolving choice of law issues. See Ticknor v. Choice Hotels Intern., Inc., 265 F.3d 931, 937 (9th Cir. 2001); Sparling v. Hoffman Constr. Co., Inc., 864 F.2d 635, 641 (9th Cir. 1988). "In determining the enforceability of . . . contractual choice-of-law provisions, California courts shall apply the principles set forth in the Restatement (Second of Conflict of Laws) section 187 which reflects a strong policy favoring enforcement of such provisions." Nedlloyd Lines B.V. v. Superior Court, 3 Cal.4th 459, 464 (1992). Section 187 provides, in pertinent part, that:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied . . . unless . . .
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the role of section 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (2d) of Conflict of Laws §187(2) (1988). In determining the

enforceability of a contractual choice-of-law provision the court must first determine (1) whether the chosen state has a substantial relationship to the parties or transaction or (2) whether there is any other reasonable basis for the parties' choice of law. If either test is met then the court must next determine whether the chosen state's law is contrary to a fundamental policy of California. If there is no conflict, the court must enforce the parties' choice of law. If there is a fundamental conflict with California law, the court must then determine whether California has a materially greater interest than the chosen state in the determination of the particular issue. If California has a materially greater interest, then the choice-of-law provision will not be enforced. See Nedlloyd, 3 Cal.4th at 464-466.

Here, there is a reasonable basis for the parties' choice of law because Penske maintains its principal place of business in Pennsylvania. (Counterclaim ¶1). Furthermore, Mushroom fails to identify any fundamental conflict between California and Pennsylvania law.[1] Accordingly, Pennsylvania law applies to the parties' conduct.

The Alleged Failure to Maintain the Vehicle in Good Operating Condition

To prevail on a breach of contract claim under Pennsylvania law, a plaintiff must show three elements: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) damages. McShea v. City of Philadelphia, 995 A.2d 334, 340 (2010).

The Agreement provides that Penske is obligated to provide "all preventive maintenance, replacement parts, and repairs to keep the Vehicles in good repair and operating condition." (Defendant's Notice of Lodgement "DNOL," Exh. 1 ¶2). Mushroom argues that Penske breached this provision by failing to properly repair the vehicle's clutch within a reasonable period of time. In support of this argument, the evidence submitted by Plaintiff consists of some statements on Penske's website and five Repair Orders on the vehicle. The first Repair Order from a facility located in Bakersfield, California, dated July 19, 2011, indicates that Plaintiff complained that the

---

[1] The court notes that both parties rely on Pennsylvania state law authorities.

vehicle was "hard to shift gears." The Repair Order indicates the cause as "worn out clutch" and that the issue was corrected by adjusting the clutch "to obtain proper clearance and travel." (Plaintiff's Notice of Lodgment "PNOL" Exh.1). The second Repair Order from a facility located in San Marcos, California, dated September 23, 2011, indicates that Plaintiff requested a clutch inspection. The Repair Order indicates that the clutch was inspected, found to be within specification, and no repairs were made. The third Repair Order from a facility located in Stockton, California, dated October 3, 2011, listed "inspect clutch operation" as a complaint. As cause, the Repair Order noted "clutch linkage bushing worn/safe to drive back to base." The Repair Order indicates that the clutch and brake components were inspected and found to be within specification. The fourth Repair Order from a facility located in San Marcos, California, dated October 24, 2011, listed "clutch linkage bushings are wor (sic)" as a complaint. As cause, the Repair Order indicates "unit needs alignment" and the corrective measure noted "align/alignment front axle." The final Repair Order, dated January 3, 2012, after the time of the malfunction, indicates "lost the clutch won't go into gear" as a complaint. As cause, the Repair Order indicates "clutch failed" and the corrective measure notes "sub and recovery 7170-10."

In addition to these Repair Orders, Mushroom cites several statements contained on Penske's website. The marketing-related statements include such statements as "Our rigorous service, powerful systems and quality assurance controls your costs and protects the value of the vehicle through its lifetime" and "We invest in the tools and training programs necessary to maintain an exceptional fleet." The court notes that these marketing-related statements, seen in context, do not impose obligations on Penske outside the four corners of the Agreement.

The court concludes that the evidentiary record submitted by Mushroom is adequate to give rise to an inference that Penske failed to maintain the vehicle in good working condition. Specifically, the documentation submitted by Mushroom is suggestive of an on-going problem with the clutch assembly of the vehicle which,

although addressed a number of times, was never properly repaired before the breakdown on January 3, 2012. In light of the repair chronology, Mushroom meets its burden by designating "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324.

In sum, the court denies summary judgment in favor of Penske on whether Penske breached the Agreement by failing to properly maintain the vehicle.

The Alleged Failure to Provide a Substitute Vehicle within a Reasonable Time

The Agreement at issue provides that Penske would provide a "Substitute [vehicle] in as nearly as practicable the same size and type as the inoperable vehicle." (DNOL Exh. ¶4a). The parties are in agreement that, under Pennsylvania law, Penske was required to deliver the replacement vehicle within a reasonable time depending on the circumstances and nature of the business. See Commonwealth v. Pendleton, 389 A.2d 532, 534-35 (1978). The undisputed time line submitted by the parties shows that, on January 3, 2012, at 12:40 a.m., Penske was first notified of the breakdown of the vehicle in western Oklahoma; at 3:18 a.m Penske arranged for a replacement truck to be towed to the site of the breakdown some 235 miles from Tulsa, Oklahoma; at 9:32 a.m. the first replacement vehicle arrived on the site; at 10:11 a.m. the parties learned that the replacement vehicle was inoperable; at 10:36 a.m. Penske located a second replacement truck; and, at 3:03 p.m. the second replacement truck arrived at the site of breakdown. (DNOL Exh. E).

Whether the delay in providing a replacement vehicle was reasonable presents a genuine issue of material fact not appropriately resolved on a motion for summary judgment. The parties simply fail to make a sufficient showing that any particular delay was reasonable, or unreasonable, under the circumstances. A determination of reasonableness is within the providence of the jury, and not this court. Accordingly, the court denies the motion for summary adjudication on this claim.

The Limitation of Damages Provision

Penske seeks partial summary judgment on the damage limitations provisions.

Section 16 provides:

> **NON-LIABILITY FOR CONTENTS.** Penske shall not be liable for loss of, or damage to any cargo or other property left, stored, loaded or transported in, upon, or by any Vehicle at any time or place.

Section 18 provides:

> **DISCLAIMER**. PENSKE MAKES NO WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY, FITNESS FOR ANY PARTICULAR PURPOSE OR ABSENCE OF ANY MANUFACTURING DEFECT OF ANY VEHICLE COVERED BY THIS [AGREEMENT].

(DNOL, Exh. A at §§16, 18).

"Under Pennsylvania law, contractual provisions limiting warranties, establishing repair or replacement as the exclusive remedy for breach of warranty and excluding liability for special, indirect and consequential damages in a commercial setting are generally valid and enforceable." New York State Elec. & Gas Corp. v. Westinghouse Elec. Corp., 564 A.2d 919, 924 (1989) (citing 13 Pa.Cons.Stat.Ann. §§ 2316, 2718 & 2719 (1982); National Cash Register Co. v. Modern Transfer Co., 224 Pa.Super. 138, 302 A.2d 486 (1973)). Unconscionable damage limitation provisions are not enforceable. See Borden, Inc. v. Advent Ink Co., 701 A.2d 255, 264 (1997). A contractual provision is unconscionable if: 1) one of the parties had no meaningful choice with respect to the provision, and 2) the provision unreasonably favors the other party." Id. (citing Witmer v. Exxon Corporation, 495 Pa. 540, 434 A.2d 1222 (1981)). The burden of establishing unconscionability lies with the party seeking to invalidate a contract. Salley v. Option One Mort Corp., 592 Pa. 323, 347 (2007).

Here, the evidentiary record demonstrates that both parties are experienced and sophisticated business people. Mushroom is a family owned business that conducts sales throughout the country. As noted by Mushroom, Penske is a much larger business with $5.2 billion in revenue. While Mushroom asserts that the contract was offered on a "take it or leave it" basis, this evidence fails to establish that Mushroom had no meaningful choice with respect to the provision. Moreover, a limitation of damages provision appears to be a reasonable business practice under Pennsylvania

law. Section 2-719(3) of the Pennsylvania Code, identical to Cal. Commercial Code 2719(3), provides:

> 'Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.'

Here, as in K & C, Inc. v. Westinghouse Elec. Corp., 437 Pa. 303, 308 (1970), the loss is commercial, not involving personal injury. As Comment 3 to Section 2-719(3) points out, the exclusion is 'merely an allocation of unknown or undeterminable risks.' The limitation of damages provision serves to allocate unknown risks. Such a provision is commercially reasonable, especially in a case such as this where the delay in obtaining a working substitute vehicle was only a matter of hours, not days or weeks. See Eimco Corp. v. Lombardi, 193 Pa.Super. 1 (1969). "The fact that consequential damages nevertheless resulted was clearly a possibility that the parties foresaw and bargained for at the inception of their relationship." New York State Electric & Gas Corp. v. Westinghouse Elec. Corp., 387 Pa. Super 537, 560 (1989). Under these circumstances, Mushroom fails to make a sufficient showing that there is a genuine issue of material fact regarding the unconscionability of the damage limitation provision (the Non-Liability for Contents provision, DNOL, Exh. A at §16).

In sum, the court denies partial summary judgment for Penske on whether Penske breached the duty to maintain the vehicle in good operating condition, denies partial summary judgment for Penske on whether Penske provided a replacement vehicle within a reasonable period of time, and grants partial summary judgment in favor of Penske on the damage limitation provision (the Non-Liability for Contents provision).

**IT IS SO ORDERED.**

DATED: January 7, 2015

Hon. Jeffrey T. Miller
United States District Judge

cc:       All parties